I'm Robert Jobe, and I'm appearing today on behalf of the Petitioner, Tara Singh. In rejecting Mr. Singh's testimony as not credible, the immigration judge identified what he perceived to be nine discrepancies in that testimony. For seven of the nine, however, the I.J. either failed to give Mr. Singh an opportunity to explain that perceived discrepancy or simply ignored the explanation that Mr. Singh had given. For example, the immigration judge faulted Mr. Singh for failing to explain why he was arrested in 1992, but his father was not. Mr. Singh's explanation is set forth in two different places. Page 118, which is the asylum application, says, My father told me that he was the one, told the police when they had arrived, that he was the one who had propagated against the election in support of the mass boycott. The police told him that he had already been warned and he should not take any political activities in the future, but you did not listen. Now we are going to give you a lesson, and they arrested me. He gave the same explanation when asked about this on page 71 of the transcript. He said, What was the reason you were arrested? His initial response was, It was because my father had boycotted the polls. It's transcribed as woods, but I think he said Then after that, the police raided our house and they told my father, We have arrested you before. You did not understand. And now we will tell you why you don't understand. We will show you what we meant, basically. And this is on page 71. The IJ just never grappled with that explanation, and as a result, the case really needs to be remanded back. Second discrepancy that the IJ perceived was between the scarcity of Mr. Singh's political activity and his testimony that the police had questioned him about, quote, the wrong things that he had been doing. Again, the immigration judge never asked him about this, and this is important because Mr. Singh testified at some point, quote, We were all demanding Khalistan, but no one ever followed up to ask him what in particular he was doing to demand Khalistan. That's on page 74 of the record. And he didn't really testify as to any specifics, did he? That's true. Other than his general support for Khalistan. That's exactly right. But again, nobody ever asked him specifically what you had done. The third discrepancy, the immigration judge says he failed to provide any explanation why the police would have suspected him of having something to do with the assassination of Beyonce Singh. Nobody ever asked him why the police might have suspected him. Any explanation he may have given may have been speculative, but no one ever asked him. Then the IJ said he provided no plausible, rational explanation why, out of all the people in the village, only he was arrested in the immediate aftermath of the assassination of Beyonce Singh. But he did. On page 75 of the record, he explained, They came to the village, and whosoever names they had, they went to the houses. They came to the village. They came to our farm also. They went to other people's houses, but they couldn't find any one home. He explained why he was the only one arrested. Evidently, they were working off a list. They went to various people's homes. He was the only one, unfortunately, left to be found at home. But the immigration judge didn't grapple with that explanation at all. He ignored it. The immigration judge found a discrepancy between Mr. Singh's testimony, supposed testimony, that the police don't arrest women, and certain documentary evidence. He cited to certain Ninth Circuit decisions that indicate that women had been arrested. And the country reports talk about that, too. That's exactly right. It's in the country reports as well. But no one ever asked Mr. Singh about that discrepancy. And that's important because it's not at all clear what he said on this point. If you look at page 93 where it came up, the testimony in the transcript is, and your mother's never been arrested, he said, no, no, they don't do arrest any of indiscernible. They can. They'll bodily abuse them. It's not at all clear what he's even saying. But no one ever followed up to ask him to clarify what he was saying, and certainly no one ever asked him, well, is your testimony somehow inconsistent with these reports in the record? Next, there is a discrepancy. The only real discrepancy in the record is between his asylum application and his testimony in court about when he was arrested in 1995 about whether his father was home or not. There is a discrepancy on this point. The application says he was not home. He testified that he was home. But, again, no one ever asked him about that discrepancy. He was never given any opportunity to explain. Well, let's take that one because what would a witness say? On one occasion, he says, my father was home. On the other occasion, my father was not home. What? The common explanation would be the preparer got it wrong. And if you look at the application. So which is true, basically? Right. Exactly. In this case, if you look at the application, it's a little strange because the font for the word home in the application is altogether different from the font on the rest of the application. It's as if the word home was inserted at some point. It's hard to know exactly what was going on there. But there's something not quite right about the application. Did you raise that issue with the board? I don't believe he raised that issue. He was represented by the same attorney who's since been disbarred. But the bottom line is — I mean, that would go to a due process argument, would it not? It does. But, again, the point is that no one ever asked him to explain that supposed discrepancy. Did the I.J. make an alternative finding? He did make alternative findings, but the BIA did not embrace those. It's a Burbano affirmance, but it's a Burbano affirmance only on the credibility issue. Okay. Finally, there's this issue about the judge says that, you know, Mr. Singh was inconsistent in that he testified that he'd never returned home, but in point of fact, he had gotten a driver's license in that same district. Basically, he was in that district. It's a district the size of Rhode Island. That certainly doesn't mean he went home. But the point that the immigration judge made was that Mr. Singh explained no particular reason why he had a need for a driver's license, let alone so drastic a need that he would take this risk. But no one ever asked him why he needed a driver's license in 1999. If you look at the record, he was asked on page 87 why he initially got a driver's license in 1986. But that's not the point. The point is, why did he need a driver's license in 1989? And nobody ever asked him that question. The bottom line here is this man's never had the hearing to which he's entitled. He's entitled to a hearing by which he at which he can be confronted with these supposed discrepancies and be given an opportunity to explain and have the judge consider that explanation. Judge Murray, he doesn't agree with the Ninth Circuit's position on this, but he still has to follow the law. And as a result, this case has to go back so this guy can get a hearing at which he can give an explanation for these alleged discrepancies. You envision or are arguing for a remand and a renewed hearing before the IJ. Is that correct? That's correct, Your Honor. At which time the government would be free to examine, cross-examine, introduce its own evidence. That's right. I think that's particularly appropriate here because of the failure to give him an opportunity to explain. We want to hear his explanations and judge whether they're credible. But also in this case, we all know that the lawyer who was representing him has since been disbarred. He did a poor job here. A lot of things went wrong in this hearing, poor translation, poor lawyering, poor transcription. This is a case that really should go back to the circuit. Something that's probably never happened before. Yeah. Well, Mr. Joe, before you step away, that does raise an issue, though, as to the proper scope of our authority on review. Do we have the power to tell the BIA to remand the matter from the Board back to the IJ to basically start this whole hearing anew? Well, I think the Board has a choice of either accepting a testimony as true or remanding it back so that with respect to these various discrepancies, he can be given an opportunity to explain and the judge can grapple with that as well. So what we can do is we can grant the petition, and in the course of doing so, we can say, here are all of the flaws in the proceeding. Right. So you can either assume that his testimony was credible or you can remand it back down and let the record be real. And given that choice, the Board will remand. Okay. Thank you. Okay. You have about a minute and a half for rebuttal. We'll hear from the Board at this time. Counsel. Good morning, Your Honors. May it please the Court. Ben Zeitlin on behalf of the Attorney General. Before I go into my prepared remarks, I would just like to address something that Mr. Joe brought up. And he seemed to be bringing up today a case of ineffective assistance of counsel. That's a claim that had not been exhausted. That's a claim that had not been argued to this Court nor to the Board. I didn't hear him argue that. I think he simply commented, which is of record, that the guy's been disbarred. Well, it seemed to be just noted that his former counsel failed to argue certain things or raise certain issues during Petitioner's testimony before the immigration judge, and that issue has never been brought before this Court. We hear your point. Why don't you turn to the more serious argument that Mr. Joe made about the never given an opportunity to explain. Sure, Your Honor. Just to begin, the instant petition for review should be denied because the record does not compel reversal of both the immigration judge and the board, which reviewed the immigration judge's decision, finding that Petitioner was neither credible or candid in his testimony. Okay. But let's take the simplest issue that Mr. Joe raised. My father was not home. My father was home. Doesn't our case law say that before you can rely on that as an inconsistency, which goes to the heart of his claim, and deny relief, you've got to confront him with it and give him a chance to explain it? Your Honor, there were so many things in the record that the immigration judge  Do you think you could start your answer to Judge Tallman's question with a yes or no? Your Honor, I do not. The question was whether our case law requires what he described. Is the answer yes or no? The answer would be no in that circumstance. Why not? I cannot speak for the immigration judge as to why he would not have asked the follow-up question to the immigration judge, to the Petitioner. Counsel, you're not listening to my question. It's a really simple question. My question is, doesn't our case law say that before an immigration judge can deny asylum relief on a material inconsistency in the asylum application, here the question, was my father present or not, the witness, Petitioner, must be confronted with the inconsistency and given an opportunity to try and explain it? That is correct, Your Honor. And did that — that didn't happen here, did it? What happened in the circumstance was — Again, yes or no? The answer is no because — Okay. Because Mr. Singh himself provided, first said, my father was home, or first said he was not home, and then switched his testimony and quickly changed it to saying he was home. Okay. So you've now laid the foundation, beautiful job, counsel, prior inconsistent statement. Now — But then the immigration judge did not go on and ask further questions. And if that's the case, and the whole theory of the petitioner's asylum claim is that I was persecuted by being taken into custody as an example to punish my father for his political views, that seems to me to be the heart of his claim as to why he's entitled to asylum, whether or not he held those beliefs or not. The police seem to think one way or the other that he did. And if that goes to the heart of his claim, do we have any choice but to send it back to the Board and say you've got to do this all over again? Respectfully, Your Honor, if you agree that — if this Court finds that the immigration judge did not ask proper follow-up questions or did not analyze all the evidence in the record properly, then the best course of action would be to remand the case back to the Board with those specific instructions. The government's position would obviously be that that's futile because there are so many other inconsistencies within the record. But if you were to focus on that specific example — Well, I just picked the most — the simplest example. I'm not suggesting there are not others. But that seems to me to be a major inconsistency that the petitioner should have been confronted on and given an offer — an opportunity to explain. Now, the documentary evidence suggests that the claim that Mr. Singh had regarding his arrest is not the way that the Indian authorities arrest people. It says that when a father is involved in political activity, they will not just arrest the son. They will arrest both the father and the son when they're home. And that — I have a site that I have the administrative record. I believe it's on page 226. So, I mean, the immigration judge, although not discussed in his finding, but discussed — but within the documentary evidence, had a reason to find this claim implausible that just Mr. Singh would have been arrested and not his father when his father was, in fact, home, as this Court would note there was a discrepancy about. But if he was home, there's — there is — the United States Department of State, in preparing their asylum profile, stated that the case would not be that — that just the son would be arrested. And I think that is one of the things that would explain the immigration judge's finding that Mr. Singh might have been implausible in stating that he wasn't politically active. It was only his father that was politically active. But in 1992 and in 95, he was arrested. And just to go to the 1990s — The I.J. found it implausible that they would arrest the son but not the father. Is that correct? That's correct. But in this instance, the Petitioner was asked about that, and he provided an explanation. Correct, Your Honor. Did the I.J. address that explanation in his determination? He provided two explanations. The one explanation — Did the I.J. address the Petitioner's explanation, alternative or not? He failed to address the alternative explanation regarding the statement that it was a — could have been a lesson. That's correct. He addressed the issue regarding whether or not his father was too old. And that was the — that was what the immigration judge relied upon. And again, as I mentioned earlier, if that is the case, if this — I thought his alternative explanation was, A, teach the father a lesson, or, B, they imputed to me my father's beliefs. Do I have that wrong? My — from my reading of the record, it was either to teach my father a lesson, and then the second was because my father was too old. Okay. That's my — We'll check the record. Okay. I mean, that's my understanding. And again, if that — if this Court deems that to be the case, that the immigration judge failed to look at that specific aspect, failed to mention the fact that Mr. Singh said to teach me a lesson, then the best course, again, would be for this Court to remand with those specific instructions. You know, I'd reiterate that there are many inconsistencies within the record. For instance, if we were to look at the 1995 arrest, Mr. Singh said that he was one of the only persons in his village that was arrested. And again, the record — the record that was submitted by Petitioner, the evidence, suggests that in a — in a report, this was submitted by Petitioner, that the Danish — the Dutch had examined all these asylum claims regarding individuals from, you know, the Punjab province. And what it said was that only three individuals were arrested following the assassination of Mr. Singh. And these three were militants. So the issue is, you know, is Petitioner on one hand says he was not politically active, and then on the other hand, the record establishes that only militants were arrested. So — Alito, the only problem I have with the argument, and it's not just in this case, but we are often forced to look at these general country condition statements and then find that they impeach the testimony of the witness as to his specific facts. And I don't know of any analogy in any other area of cases that we review where we're asked to do that. I realize it's an administrative proceeding and, you know, a lot of hearsay and sort of broad evidence is admitted. But it just strikes me that it's hard to impeach anybody when you're using evidence that is that general, when what our case law says is you just got to confront them and say, you know, how do you explain this, that Dutch think that only three in the whole state were arrested. Are you one of the three? Well, Your Honor, I mean, again, you know, that goes back, I think, to the initial points that you raised, which he confronted. But there is such a vastness in the agency of these asylum applications. The immigration judge sees countless claims, I think, regarding the same claims of persecution. And although every individual, of course, is entitled to a fair hearing before the immigration judge, I don't know if it would be, if the immigration judge would be able to rely on each specific part of, you know, a stack of documents that were submitted to him before questioning the individual. I mean, a lot of these documents are submitted the day of the hearing. And sometimes you'll see records over 1,000 pages. And to expect the immigration judge to be able to review that document prior to the hearing, I think, would essentially be impossible for the immigration judge. Roberts. Okay. Thank you for your argument. Thanks for coming in today. We appreciate it. Rebuttal, Mr. Jobe? Just very briefly on this 1995 thing. I haven't seen, and I don't know where this is in the record, where counsel says that in 1995 only three people were arrested in connection with the arrest of Beyonce Singh. The point is that if Mr. Singh had been asked about this, he could have responded because there are reports that show that as many as 5,000 people were arrested in the aftermath of the killing of Beyonce. But because the immigration judge never raised the issue, he didn't know it was even in play, he never had an opportunity to present that kind of rebuttal evidence. And that's the reason why you have to confront people with these alleged discrepancies. It not only gives them an opportunity to respond, it gives them an opportunity to present corroborating evidence on that point. He didn't have that opportunity. He didn't really have the hearing to which he's entitled, and it's for that reason that it has to go back. Okay. Thank both sides for their argument. The case argued will be submitted for decision.
judges: Hawkins, Tallman, Singleton